COVINGTON, Judge.
This is a devolutive appeal by Philip A. Petersen, plaintiff, from a judgment of the trial court signed on September 14,1981, in which plaintiff’s petition for a writ of mandamus against the Town of Abita Springs, through its Mayor and Board of Aldermen, was denied. The mandamus sought a permit to complete the construction of a cer *4 tain building located at Lot 2, Square 38 in the Town of Abita Springs, Parish of St. Tammany, Louisiana, together with any necessary licenses in connection therewith. The town has answered the appeal, seeking recovery of attorney’s fees incurred in the defense of this matter.
The chronology of events giving rise to this matter are, for the most part, undisputed. This chronology is as follows:
DATE
EVENT
February 18,1976
Summer, 1979
September 4,1979
October 12,1979
October 31,1979
January 22,1980
February 27,1980.
The plaintiff obtains a building permit required under the Flood Hazard Insurance Ordinance.
Extensive advertising and personal appearances by the Abita Springs zoning commissioners advocating adoption of a zoning ordinance establishing zoning districts. Before one of the largest assemblies of Abita Springs citizens ever gathered in the Abita Springs Town Hall, a public hearing is held regarding adoption of the zoning ordinance. The Mayor and Board of Aldermen meet in regular session and adopt the zoning ordinance, thereby imposing restrictions on use of property within the corporate limits of Abita Springs (which has the effect of zoning the Petersen property residential).
Petitioner requests a liquor license and permission to open a lounge in a structure consisting of a perimeter of concrete blocks without interior walls, roof, or utilities. The Town Clerk advises that such use is prohibited under the zoning ordinance and further advises plaintiff that he must take the matter up with the zoning commission. Plaintiff appears at the zoning commission meeting and requests permission to put in an amusement center serving liquor on the premises. Mr. Petersen was advised that the commission was not in favor of such a development but he could file for a variance.
Plaintiff files written request acknowledging that his building is not complete but requesting that he be allowed to use it for the stated purpose.
A public hearing is held by the zoning committee relative to plaintiff’s application to conduct a business selling liquor. At the hearing, the Chairman, Mr. Biitch, advised Mr. Petersen that a commercial operation such as a feedstore or other such facility as was originally contemplated could be a service to the people of the area. Mr. Petersen insisted on using the premises to sell liquor. The residents of Brooks Forest Road and adjoining residential properties protest the use of the premises for the purpose expressed by Mr. Petersen. The Chief of Police, Mr. Treadway, speaks against the use of the premises for the sale of liquor because of the narrow road and
DATE
March 4,1980
March, 1980 March 26,1980
April 30,1980 May 6,1980
May 28,1980
June 25,1980
August 5,1980
September 5,1980 February 4,1981
EVENT
dangerous curves. (The minutes contain numerous other expressed reasons against a lounge-type commercial operation.) Mr. Petersen insists on the use requested. The zoning commission then votes to deny the variance.
Mr. Petersen appears at the Town Council meeting and verbally requests a zoning change. He is advised to proceed in accordance with the procedure established in the zoning ordinance.
Mr. Petersen files petition requesting zoning change.
Mr. Petersen attends planning and zoning meeting and withdraws petition to amend zoning ordinance.
Petitioner again requests an amendment to the zoning ordinance.
The Mayor and Board of Aldermen receive the petition for amendment of the zoning ordinance filed by Mr. Petersen and forward it to the zoning commission.
The petition is reviewed by the zoning commission and a public hearing scheduled for June 25,1980.
The zoning commission holds a public hearing at which the Town Attorney explains in advance of any discussion what points must be made in order to avoid prohibited spot zoning. Following the Town Attorney’s presentation, Mr. Petersen speaks in favor of his refused requested change but refuses to state his intended commercial use. The zoning commission finding, among other things, that there has been no showing that the proposed change would benefit the public as a whole, votes to recommend against the change.
The Town Council has a special hearing and public meeting to consider Mr. Petersen’s requested zoning change. After the public hearing, the Council votes to uphold the decision of the zoning commission and denies the change.
Mr. Petersen’s building remains structurally uncompleted.
Petitioner files Writ of Mandamus in 22nd Judicial District Court requesting the issuance of a permit to complete the building and for all other appropriate licenses.
The record thus reflects that on February 18, 1976, Philip A. Petersen applied for a building permit to construct a new building on Lot 2, Square 38 of the Town of Abita Springs. The application generally described the building to be built and stated its intended use: “bottom as store facilities— top for apartments” (emphasis added). The permit, signed by the then Mayor, Edwin S. Peters, Jr., was issued that same date. At the time of the issuance of the building permit, the town had no zoning ordinance governing land use.
*5 On September 4, 1979, the town adopted a zoning ordinance, which had the effect of zoning the Petersen property “residential.”
On October 12,1979, Petersen applied for a liquor license and permission to open a lounge (a different use from the original permit) in the subject building, which was still incomplete and not being used, although some three and one-half years had elapsed since the issuance of the building permit. The Town Clerk advised Petersen of the zoning ordinance and informed him that the procedure set forth in the ordinance would have to be followed. On October 31, 1979, Petersen’s request to the zoning commission for permission to use the building for commercial uses was denied. The plaintiff then applied to the zoning commission, pursuant to the zoning ordinance, for a variance to use the property for commercial purposes, which was denied on February 27,1980. Thereafter, plaintiff requested a zoning change in the zoning ordinance in order to classify his property as commercial, which request was denied by the zoning commission on June 25, 1980. Subsequently, on August 5, 1980, Petersen appeared before the Town Council (Board of Aldermen) after the zoning commission meeting, seeking a zoning change from that body. The council upheld the decision of the commission and denied the requested zoning change.
First, the appellant contends that the provisions of the Abita Springs Zoning Ordinance are not applicable to him or to his property, because of the prior issuance of a building permit to him. In support of this assertion, Petersen cites the case of State ex rel. Fitzmaurice v. Clay, 208 La. 443, 23 So.2d 177 (1945). The facts of the Clay case are distinguishable from the instant case before the Court. In Clay there was no zoning ordinance in force at the time of the application for the requested permit; while in the present case, the Abita Springs Zoning Ordinance had been adopted and was in effect at the time Petersen requested the issuance of a liquor license and permit for a lounge. Magness v. Caddo Parish Police Jury, 318 So.2d 117 (La.App. 2 Cir. 1975), is another case where the nonconforming use was commenced prior to the effectiveness of the particular zoning ordinance. Such is not the situation in the case before the Court.
Petersen obtained his building permit on February 18, 1976. The structure contemplated under this permit was described as a two-story building for the stated use of a store facility and apartments. After receiving the permit, Petersen proceeded to construct a single-story cinderblock building. Three and one-half years later, when the Zoning Ordinance was enacted, this single-story building had not yet been completed. Five years after the issuance of the permit, at the time Petersen sought the writ of mandamus, no further construction progress had been made. At the hearing of this matter on February 23, 1981, Petersen conceded that the building had not been completed, and admitted that for many years during this period of time no work was done toward its completion. It, of course, had not been used for any purpose.
As shown by the stated facts, the instant case is also distinguishable from City of Crowley v. Prejean, 173 So.2d 832 (La.App. 3 Cir. 1965). In that case the landowner established a nonconforming use before the effective date of the zoning ordinance. No additional construction was required beyond the crucial date, and the full extent of the trailer park (a nonconforming use in a residential area) was well defined at that time.
Section 9-210 of the Abita Springs Zoning Ordinance reads:
“The lawful use of any building, structure, or land existing at the time of the enactment of this chapter may be continued, although the use does not conform with the provisions of this chapter... . ”
The wording of this section of the Abita Springs Zoning Ordinance requires actual lawful use of a building, structure or land in order to establish a nonconforming use. A building under construction for the intended purpose of a commercial store does not satisfy such a requirement.
It is settled that the mere intention to use a parcel of land for commercial activ *6 ity does not constitute a non-conforming use. Deshotel v. Calcasieu Parish Police Jury, 323 So.2d 155 (La.App. 3 Cir. 1975), writ denied, 326 So.2d 371 (La.1976). In that case, the Court found that the landowner had established a nonconforming use where a building permit had been obtained prior to the enactment of a zoning ordinance. However, the Court pointed out that its decision was based on the fact that the building had been completed prior to the enactment of the zoning regulations.
The record establishes that the plaintiff has never used the land or building in question for any purpose inconsistent with a residential zoning classification. We thus hold that Petersen has not established a nonconforming use, and is not entitled to operate a commercial facility, i.e., a barroom or lounge at that location. The writ of mandamus was property denied.
The appellee argues that the trial court erred in denying it attorney’s fees pursuant to LSA-R.S. 42:261 E, which provides:
“Any party who files suit against any duly elected or appointed public official of this state of [sic] any of its agencies or political subdivisions for any matter arising out of the performance of the duties of his office other than matters pertaining to the collection and payment of taxes and those cases where the plaintiff is seeking to compel the defendant to comply with and apply the laws of this state relative to the registration of voters, and who is unsuccessful in his demands, shall be liable to said public official for all attorneys fees incurred by said public official in the defense of said lawsuit or lawsuits, which attorneys fees shall be fixed by the court. ^
“The defendant public official shall have the right, by rule, to require the plaintiff to furnish bond as in the case of bond for cost, to cover such attorneys fees before proceeding with the trial of said cause.”
This action for mandamus was filed by Philip Petersen against the Town of Abita Springs. It was not instituted against the town officials for a matter arising out of the performance of duties of their offices. They were not named individually as parties defendant; at most they were merely nominal parties. The judgment rendered by Judge Crain in this matter properly rejected the claim of the public officials for attorney’s fees. See Brown v. Aetna Life & Casualty Ins. Co., 394 So.2d 290 (La.App. 3 Cir. 1980).
For the assigned reasons, the judgment appealed is affirmed at appellant’s costs.
AFFIRMED.